[Civ. No. 4474. Second Appellate District, Division Two.—June 3, 1927.]

ESTHER COHN, Respondent, v. W. H. LEFFINGWELL, Appellant.

[1] QUIETING TITLE—EVIDENCE—MAPS—RECORDATION—TIME.—In an action to quiet title a map filed in the recorder's office twenty years after the execution of a deed has no evidentiary value.

[2] DEDICATION—LAND USED AS HIGHWAY—EVIDENCE.—Land used as a highway by the public generally for forty years, with knowledge and acquiescence of the patentee's grantee, who was paid for performing work thereon, and improved by the county as a road and by the town, after its incorporation, as a street, was dedicated to a public use.

[3] QUIETING TITLE—BOUNDARIES—LAND ABUTTING ON STREET—EVIDENCE.—In this action to quiet title, evidence that land was dedicated to public use as a street, and that plaintiff and her predecessors were in possession and ownership of land immediately abutting on the south for over forty years before the commence-

1. What amounts to dedication of highways, note, 57 Am. St. Rep. 749. See, also, 9 Cal. Jur. 41; 8 R. C. L. 903 et seq.; 13 R. C. L. 33. Presumption of dedication from user of highway, note, Ann. Cas. 1914D, 335. See, also, 9 Cal. Jur. 41; 13 R. C. L. 34.

ment of the action, was sufficient to show that there was no land north of her lot from which the lot claimed by defendant could be carved.

[4] Id.—Deeds — Description — Title — Evidence.—In such action, where the parties derived their title from a common source, a deed from the common grantor describing plaintiff's lot as running one hundred feet north from the line of another lot, parallel with a certain street, and one hundred feet west, parallel with another street, was sufficient to show that there was no land north of plaintiff's lot from which said grantor could carve a lot described in a subsequent deed to defendant.

[5] Id.—Area Embraced in Sidewalk—Title—Adverse Possession—Easements.—In such action, where plaintiff and her predecessors were continuously in possession in fee of the sidewalk area on the north of her lot for over forty years, the title thereto would be in plaintiff subject to the easement vested in the town for street purposes.

[6] Id.—Evidence—Assessment Lists—Reference to Map.—In such action, assessment lists, referring to a map filed by plaintiff's predecessors in title twenty years after they conveyed the land, being purely negative evidence, and not connected with any map recognized by law, were properly excluded from the evidence as incompetent and immaterial.

(1) 22 C. J., p. 970, n. 15.    (2) 18 C. J., p. 58, n. 12.    (3) 32 Cyc., p. 1372, n. 26.    (4) 22 C. J., p. 970, n. 14.    (5) 2 C. J., p. 254, n. 74.    (6) 32 Cyc., p. 1371, n. 19.

APPEAL from a judgment of the Superior Court of Inyo County. William D. Dehy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arnold Praeger and William A. Sumner for Appellant.

A. H. Swallow for Respondent.

MURPHEY, J., *pro tem.*—This is an appeal by the defendant, Leffingwell, from a judgment adverse to him and quieting plaintiff's title to the real property in controversy.

In 1868 the government of the United States patented to William Hyer the fractional northwest quarter of section seven (7), township seven (7) south, range thirty-three (33) east, in the district of lands subject to sale at Stockton, California. In 1869 Hyer conveyed the same land to John

B. Clarke, the predecessor in interest of both plaintiff and defendants. In 1880 Clarke and wife conveyed a portion of this land to Briggs who, in turn, in 1888, conveyed the same parcel of land to Cohn, the husband of the plaintiff in this action. The description common to both of the deeds immediately hereinbefore mentioned is as follows: "Commencing at the north line of the saloon lot known as J. M. Horton's saloon and running thence north and parallel with the main street in the town of Bishop Creek, one hundred (100) feet; thence west and parallel with the school-house street one hundred (100) feet to the line of said saloon lot formerly owned by J. M. Horton; thence east and along the line of said saloon lot one hundred (100) feet to the place of beginning."

The present action is one by the plaintiff, the widow of Cohn, the grantee named in the last foregoing deed to quiet her title to the lot of land described as follows: "Commencing at the southwest corner of the intersection of West Line street, formerly known as Schoolhouse street, with Main street in said town of Bishop, and running thence north eighty-nine degrees (89°) and thirty minutes (30') west one hundred and two/one-hundredths feet (100.02 ft.) along said West Line street; thence south one hundred nine and six-tenths feet (109.6 ft.); thence north eighty-nine degrees (89°) and twenty-six minutes (26') east one hundred feet (100 ft.) to said Main street; thence north along Main street one hundred seven and seventy-five one-hundredths (100.75) feet to the place of beginning." The defendant, Mary A. Clarke, surviving wife of John B. Clarke, hereinbefore mentioned, has been served with summons and having failed to appear and answer, her default was duly entered. [1] Some twenty years after the deed by Clarke and wife to Briggs, a map was filed by the Clarkes in the office of the county recorder of Inyo County in which they certify, "I hereby certify that the above is a true map of what the title of said map claims it to be." This so-called map in law has no evidentiary value and is only referred to because of the fact that there is delineated on said map a lot, twenty-three and a fraction feet in width, upon which appears the name of John Clarke, which said lot is placed north of the lot owned by the plaintiff and between that lot and School or West Line Street. It is this lot that is claimed in this

action by the defendant Leffingwell as the grantee of the Clarke interest. When Briggs purchased from Clarke he erected a store building on the northerly side of the lot. When Cohn came into possession of the lot as grantee of Briggs he built a sidewalk on the north side of the building as well as on the Main Street side. [2] The evidence is overwhelming that at all times subsequent to the erection of the Briggs store and down to the present time all the land north of that building and between it and a lot known as the Black lot on the opposite side of School or West Line Street was used as a road, street, and highway by the public generally and with the knowledge and acquiescence of the Clarkes. The road and street was improved by the county as a road and by the town of Bishop after its incorporation as a street, and Clarke, the grantee of plaintiff's predecessor, was employed to perform labor and did perform labor and was paid for performing work and labor thereon. The testimony relied upon by appellant as negativing this state of facts is so meager and inconsequential that it does not raise a doubt in the mind of an impartial investigator as to the utter lack of merit in the appellant's contention in this respect. Under this state of facts and the law applicable thereto there can be no doubt that this land was dedicated to a public use during all these years. [3] The evidence is equally conclusive that the plaintiff and her predecessors have been in the possession and ownership of the land immediately abutting on this street for a period of more than forty years next preceding the commencement of this action. From this the conclusion is inevitable that there could be and was no land north of plaintiff's lot out of which could be carved the Leffingwell lot. We believe that the foregoing discussion is determinative of this case.

[4] However, we feel that the same result obtains from a fair consideration and construction of the Clarke deed to Briggs. It will be observed that in this deed the first course runs one hundred feet north from the line of the Horton saloon lot and, as he states, parallel with Main Street and one hundred feet west, and, as he states, parallel with School Street, which street was subsequently known as West Line Street. No one questions the fact that the word "parallel" as used with reference to the course on Main Street meant,

and the parties intended it to mean one hundred feet along the property line of that street. Why should any different meaning be given to the. word in distinguishing the course along School Street? Clarke named this street in his deed and designated the course the same as he had done on Main Street. In this connection it may also be mentioned that as early as 1872 Clarke initiated proceedings before the supervisors of Inyo County to dedicate a street sixty feet wide which ran along the north side of the quarter-section hereinbefore described. Whether this dedication was ever consummated in accordance with the requirements of law is not disclosed by the record. The record does not disclose by legal or satisfactory evidence the exact location of the line of the Horton lot from which the first call in the deed to Briggs was started. Neither is there anything in the record to indicate the exact location of the northern quarter-section line or the corner of the northwest quarter of said section 7. The record does show, however, that in the deed from Clarke to Hoover, who was the predecessor of Horton, the Horton lot is described as follows: " . . . all that certain lot, piece or parcel of land, situate, lying and being in the town of Bishop Creek, County of Inyo, state of California and bounded and particularly described as follows; —to-wit: Fifty (50) feet fronting on the west side of the Main street and one hundred (100) feet in depth, said lot being about one hundred (100) feet south of the northeast corner of the fence on the northwest quarter of section number seven (7) township number seven (7) south, range number thirty-three (33) east." This is extremely significant in view of the language in the deed from Clarke to Briggs on a course along Main Street one hundred feet from the Horton line. The Horton lot is described as being one hundred feet south of the quarter-section line, clearly indicating that it was the intention of the parties and their understanding that there was no more than one hundred feet intervening between the Horton line and the quarter-section line. There can be no doubt that the extreme northerly limit of Clarke's land was the northerly line of this northwest quarter and that he owned no land north of or beyond that line. The deed to Briggs conveyed a lot one hundred feet square situated on the northeast corner of that particu-

lar quarter-section. His deed to Hoover conveyed a lot one hundred feet south of the northern line of that section. These are Clarke's declarations in his deeds and there is no evidence in the record definitely or at all impeaching this status as made by him. It definitely shows what the parties intended to accomplish and what they actually did effectuate. It seems to us that this amounts to a practical demonstration that the Clarkes owned no land north of the Cohn lot from which to carve the land described in the Leffingwell deed.

[5] There appears to be a few feet more than the one hundred feet called for by the original deed in the engineer's draft of a description as contained in the amended complaint. This, no doubt, arises from the fact that the description was probably taken to include the sidewalk area on the north of the Cohn store, the title of which, of course, in fee would be in the plaintiff, subject, however, to the easement vested in the town of Bishop for street purposes. The plaintiff and his predecessors have been continuously in possession of this sidewalk area, subject to the undoubted rights of the inhabitants of the town of Bishop to use the same for street purposes.

[6] Complaint is made by appellant that the court excluded assessment lists of the Cohn property over a period of years, which referred to the so-called Clarke map. The offered evidence was purely negative in character, not connected with any map recognized by law, and was properly excluded; it was incompetent and immaterial.

The judgment is affirmed.

Craig, J., and Thompson, J., concurred.